# United States Court of Appeals for the Federal Circuit

2008-1288


MBO LABORATORIES, INC.,

Plaintiff-Appellant,

v.

BECTON, DICKINSON & COMPANY,

Defendant-Appellee.


John M. Skenyon, Fish & Richardson P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief was Jolynn M. Lussier.

William F. Lee, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for defendant-appellee. With him on the brief were William G. McElwain, Amy K. Wigmore and Todd C. Zubler, of Washington, DC; Alexandra McTague, of New York, New York.

Appealed from: United States District Court for the District of Massachusetts

Judge Joseph L. Tauro

# United States Court of Appeals for the Federal Circuit

2008-1288

MBO LABORATORIES, INC.,

Plaintiff-Appellant,

v.

BECTON, DICKINSON & COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the District of Massachusetts in case no. 03-CV-10038, Judge Joseph L. Tauro.

_____

DECIDED: April 12, 2010

_____

Before GAJARSA, CLEVENGER, and DYK, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

MBO Laboratories, Inc. ("MBO") appeals from the U.S. District Court for the District of Massachusetts' judgment in favor of Becton, Dickinson & Co. ("Becton"), invalidating MBO's U.S. Reissue Patent No. 36,885 (the "RE '885 patent") in its entirety based on the rule against recapture. Because we hold that MBO violated the rule against recapture, we affirm the district court's holding that RE '885 patent claims 27, 28, 32, and 33 are invalid, but we reverse the district court's invalidation of all other

claims. We remand to the district court to address Becton's motion for summary judgment of non-infringement on original claims 13, 19, and 20.

## BACKGROUND

MBO is the assignee of the RE '885 patent, which is a reissue of U.S. Patent No. 5,755,699 (the "'699 patent"). In our previous opinion, we summarized the RE '885 patent's technology and prosecution history at length. See MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1326–28 (Fed. Cir. 2007). We only recount the facts relevant to this appeal below.

I.      The Technology

The RE '885 patent discloses a design for a hypodermic safety syringe. "The patented invention, the accused device, and relevant prior art syringes all include features intended to protect health care workers and bystanders from inadvertent needle sticks following an injection or drawing of fluid." Id. at 1326. In general, these syringes protect against needle-stick injuries by covering a contaminated cannula or needle "after removal from the patient." Id. The RE '885 patent teaches a syringe that protects against needle-stick injuries by sheathing a contaminated needle in a flange-covered guard. Specifically, the patent discloses a needle mounted inside a "guard body" wherein the needle can slide relative to the guard. See RE '885 patent figs.4, 6B, col.2 ll.65–67, col.3 ll.1–3. "The needle's sharp end protrudes through a hole in the front of the guard, permitting it to be inserted into the patient. When the needle is removed from the patient, the health care worker slides the needle backwards relative to the guard." MBO, 474 F.3d at 1326. As soon as the health care worker slides the needle passed a "blocking flange," which is mounted to the guard body, the flange

snaps over the needle tip and sheaths it inside the guard body. RE '885 patent at [57]. The figures below from the RE '885 patent display how the needle, guard body, and flange appear before and after a health care worker uses a syringe on a patient.





Figures 4 and 6B from the RE '885 patent

II. Prosecution History

The RE '885 patent issued from the fifth application in a patent family that relates back to November 8, 1990. Those patents and applications include (1) U.S. Patent No. 5,176,655 (the "'655 patent"); (2) a continuation-in-part of the '655 patent, issued as U.S. Patent No. 5,395,347 (the "'347 patent"); (3) an abandoned continuation of the '347 patent, Application No. 08/398,772 (the "'772 application"); (4) a continuation of the '772 application, issued as the '699 patent; and (5) a reissue of the '699 patent, issued as the RE '885 patent. The '347 patent, the '772 application, the '699 patent, and the RE '885 patent share the same specification in substantial part. But the prosecution histories for only the '655 and '347 patents and the '772 application are relevant to the issue on

appeal. Those prosecution histories contain the following exchanges with the U.S. Patent and Trademark Office (the "Patent Office").

On November 8, 1990, MBO filed its first patent application covering a hypodermic safety syringe,[1] resulting in the '655 patent. MBO, 474 F.3d at 1326. Prosecution claim 18 of this first application covered a "disposable medical assembly" comprising, among other things, a "guide means and manipulating means being relatively movable." The examiner rejected all prosecution claims, including claim 18, as anticipated by or obvious over U.S. Patent No. 4,923,281 ("Kothe"). Id. In response, MBO amended prosecution claim 18 by adding limitations, including a means-plus-function limitation that described the needle retracting into the guide means. In its amendment, MBO described the limitation as a "means preventing distal emergence of the needle from said guide means after retraction thereof into said guide means." Referring to this amendment, MBO explained to the examiner that "[a] chief feature of applicants' invention, inter alia, is not only the safe retraction of the needle or cannula . . . into the tubular member . . . , but also precluding the inadvertent reemergence thereof to present a physical and contamination hazard." After a series of amendments not relevant here, the examiner allowed the claims and the application issued as the '655 patent with prosecution claim 18 issuing as claim 14. Id. at 1327; '655 patent col.11 ll. 59–60.

On November 6, 1992, MBO filed its continuation-in-part of the '655 patent application with claims for a hypodermic safety needle for blood collection, resulting in

---

[1] Individuals, not corporations, create inventions, see Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993), but for simplicity we will use "MBO" as shorthand for "the inventors who assigned their patents to MBO" throughout the opinion.

the '347 patent. But the examiner rejected all claims in this application as obvious over U.S. Patent No. 5,026,356 ("Smith"). MBO, 474 F.3d at 1327. "The Smith patent discloses a safety syringe with a side-mounted guard that snaps down and over the tip of the needle." Id. MBO distinguished Smith by explaining that Smith "discloses a usual needle . . . fixed to and extending from a conventional syringe barrel . . . . The needle is not slidably received in the barrel." According to MBO, "It is intended in Smith that as the needle is withdrawn from the flesh that the slidable member . . . is bodily moved forward . . . , whereupon after the needle is withdrawn, the point only of the needle lies behind [the] leg [of the side-mounted guard] . . . ." In MBO's view, this structure raised safety concerns because the needle could not retract and an operator could only manually cover the needle tip. MBO explained that "the needle [in Smith] . . . may be fully withdrawn from the patient's flesh by an inattentive or rushed operator . . . with the needle point and needle end portion fully exposed and hazardous for needlestick and contamination!" "MBO [thus] amended its claims to distinguish from Smith on the basis that its needle guard fully surrounded the needle as opposed to only covering the 'tip of the point' . . . ." Id. The examiner, however, again rejected some terms as unpatentable over prior art. But the examiner eventually allowed the claims to issue as the '347 patent after MBO distinguished the prior art "on the grounds that [MBO's] blocking flange moved into 'adjacent relation' to the front of the guard, unlike any of the cited art." Id.

On March 6, 1995, MBO filed the '772 application as continuation of the '347 patent. As before, the examiner rejected the application's claims as anticipated by U.S. Patent No. 4,850,977 ("Bayless"), "or as obvious in view of Bayless and Smith." Id.

"Bayless discloses a safety needle with a spring-loaded sheath that, when manually triggered, extends out and then closes over the exposed needle tip." Id.

In response to the rejection, MBO explained that Bayless disclosed a "needle [that] is fixed to [the] body 'support chamber.'" "The needle thus never moves and is immovable in the syringe." Instead of a needle moving into a guard, MBO argued that "Bayless provides a separate hollow needle sheath . . . which is axially movable on [the] chamber . . . , which is propelled forwardly by a compression spring." MBO proceeded to distinguish Bayless from its invention on five grounds, two of which are relevant to this appeal. First, MBO explained that its "needle . . . is recited as slidable in the [guard] body . . . between the Fig. 3 and Fig. 6B positions." Second, MBO explained that "the [guard] body . . . has a front surface . . . through which the needle . . . is initially extended (Fig. 3) and subsequently slidably retracted (Fig. 6B) with the needle . . . no longer extending forwardly through the [guard] body's front surface."

Despite MBO's response, the examiner again rejected the claims as obvious over Bayless in combination with U.S. Patent No. 5,125,908 ("Cohen"). Cohen discloses a safety syringe with a needle that retracts into a syringe holder. The examiner, however, accepted MBO's argument that Bayless only disclosed a fixed needle. According to the examiner, "Bayless does not disclose a retractable needle." But the examiner found that Cohen provided the missing component, rendering MBO's syringe obvious: "Cohen discloses a retractable needle . . . in the same field of endeavor for the purpose of safely disposing of a needle." After this second rejection, MBO distinguished its invention from Bayless and Cohen on three grounds. MBO argued that unlike the prior art, its invention required (1) "a [guard] body . . . for slidably

receiving a needle," (2) a safety flange that engages "when the needle is slidably retracted" into the guard body, and (3) a mount for the safety flange's spring that prevents the flange from sliding up or down the guard body. See id. at 1328. Noting that Cohen had no flange and no spring mount, MBO argued that no combination of Bayless and Cohen could provide the three points listed above. Based on these arguments, the examiner allowed the claims. But MBO abandoned the '772 application to pursue another application with additional claims, resulting in the '699 patent. Id.

Finally, MBO sought a reissue patent on July 1, 1999, arguing that it had a right to broader claims than those contained in the '699 patent. "Specifically, [MBO] noted that it was entitled to claim a system having 'any relative movement between the needle and the body,' not just a 'system wherein the needle must be bodily moved toward the safety device.'" Id. In MBO's reissue application, claims 1–20 represented the original patent claims from the cancelled '699 patent and claims 21–36 represented the reissue claims. The Patent Office granted MBO's reissue application without objection, resulting in the RE '885 patent.

III.    Court Proceedings

On January 7, 2003, MBO filed a patent infringement suit against Becton in district court, asserting that Becton's SafetyGlide<sup>TM</sup> hypodermic safety syringes infringed RE '885 claims 13, 19, 20, 27, 28, 32, and 33. See MBO Labs., Inc. v. Becton, Dickinson & Co., 385 F. Supp. 2d 88, 91 (D. Mass. 2005). After holding a Markman hearing, the district court construed several claim terms, id. at 106–11, including the term "'slidably receiving' (as well as terms 'relative movement' and 'relatively moved'

found in other claims) . . . to refer to a stationary body into which the movable needle retracts," id. at 108.

This court reversed all of the district court's claim constructions except for one not relevant to this appeal. MBO, 474 F.3d at 1330–34. We held that the district court improperly construed the terms in light of the rule against recapture instead of relying on the terms' ordinary meanings, contrary to Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc). MBO, 474 F.3d at 1332. In reversing, we interpreted the terms "slidably receiving," "relatively moved," and their cognates to refer "to the physical relationship between the guard body and the needle, such that the guard body is capable of sliding relative to the needle." Id. at 1333 (internal quotation marks omitted). We held that "the terms 'relatively moved,' 'slidably receiving,' and their cognates permit the needle and guard to slide in any manner." Id. We then remanded the case to the district court to conduct further proceedings consistent with the proper claim construction. Id. at 1334.

On remand, the parties entered into a stipulation agreement, narrowing the issues before the district court. MBO limited its infringement contentions to RE '885 claims 13, 19–20, 27–28, and 32–33, and Becton admitted infringement of claims 32 and 33 if they were valid. Becton then filed a motion for summary judgment of invalidity and a motion for summary judgment of non-infringement. In support of its invalidity claim, Becton argued that RE '885 patent claims 27, 28, 32, and 33 were invalid because MBO had recaptured subject matter it surrendered during patent prosecution. Becton did not, however, argue that original claims 13, 19, and 20 were invalid because

of recapture. In support of its non-infringement claim, Becton argued that claims 13, 19, and 20 did not cover its syringes.

Even though Becton limited its recapture argument to the reissue claims, the district court held that the entire RE '885 patent was invalid because claims 27, 28, 32, and 33 recaptured surrendered subject matter. The district court consequently denied Becton's motion for summary judgment of non-infringement as moot and entered final judgment in Becton's favor. Shortly thereafter, MBO timely filed a notice of appeal. Seeking to clarify its position, Becton also filed a motion to reconsider and amend the judgment with the district court, explaining that its "motion based on the recapture rule . . . was only directed to the claims added by reissue—claims 27, 28, 32 and 33." While Becton's motion was pending, this court suspended the appeal until the district court ruled on the motion. The district court, however, denied Becton's motion for reconsideration without explanation, prompting this court to reactivate the appeal. This court has jurisdiction over MBO's timely filed appeal under 28 U.S.C. § 1295(a)(1).[2]

## DISCUSSION

On appeal, MBO argues that the district court erred in holding that RE '885 patent claims 27, 28, 32, and 33 violate the rule against recapture. MBO asserts that it never surrendered a guard body that could move relative to the syringe's fixed needle in its correspondence with the Patent Office. MBO further argues that the district court erred by invalidating the RE '885 patent in its entirety, including original patent claims 13, 19, and 20.

---

[2] On October 8, 2009, we dismissed Becton's cross-appeal for lack of standing, ordering Becton to file a corrected opposition brief and MBO to file a corrected reply brief. MBO Labs., Inc. v. Becton, Dickinson & Co., No. 2008-1288, 2009 WL 5948845, at *1 (Fed. Cir. Oct. 8, 2009).

We review a district court's legal determination that a reissue patent violates the rule against recapture without deference. Pannu v. Storz Instruments, Inc., 258 F.3d 1366, 1370 (Fed. Cir. 2001). However, we review the district court's underlying factual findings in support of its recapture holding for substantial evidence. Id. As explained below, we affirm the district court in holding that MBO violated the rule against recapture and in invalidating reissue claims 27, 28, 32, and 33. Accordingly, we need not address Becton's arguments that claims 32 and 33 are invalid on alternative grounds. However, we reverse the district court's erroneous invalidation of all other claims and remand to the district court to address Becton's motion for summary judgment of non-infringement on original claims 13, 19, and 20.

I.    The Rule Against Recapture

Under the reissue statute, a patentee may surrender a patent and seek reissue "enlarging the scope of the [original patent's] claims" if "through error without any deceptive intent" he claimed "less than he had a right to claim in the [original] patent" and he applies for reissue "within two years from the grant of the original patent." 35 U.S.C. § 251 (2006). We have explained that this statute "is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." In re Weiler, 790 F.2d 1576, 1579 (Fed. Cir. 1986).

Notwithstanding its remedial nature, the reissue statute has limits. "The reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application." Id. at 1582. Under the rule against recapture, a patentee's reissue claims are invalid when the patentee broadens the scope of a claim in reissue to cover subject

matter that he surrendered during prosecution of the original claims.  See Hester Indus., Inc. v. Stein, Inc., 142 F.3d 1472, 1480 (Fed. Cir. 1998) ("The recapture rule 'prevents a patentee from regaining through reissue . . . subject matter that he surrendered in an effort to obtain allowance of the original claims.'" (quoting In re Clement, 131 F.3d 1464, 1468 (Fed. Cir. 1997))).

This court bars recapture because a patentee is only entitled to a reissue patent for broader claims when the patentee claimed "less than he had a right to claim in the patent" through "error without any deceptive intent[]," not through deliberate amendments or arguments designed to convince an examiner to allow the claims. 35 U.S.C. § 251; see also Medtronic, Inc. v. Guidant Corp., 465 F.3d 1360, 1372–73 (Fed. Cir. 2006) ("[T]he deliberate surrender of a claim to certain subject matter during the original prosecution of the application for a patent 'made in an effort to overcome a prior art rejection' is not such 'error' as will allow the patentee to recapture that subject matter in a reissue." (quoting Clement, 131 F.3d at 1468–69)); Haliczer v. United States, 356 F.2d 541, 545 (Ct. Cl. 1966) ("[D]eliberate withdrawal or amendment of claims . . . to obtain a patent cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251, and is not an error of the kind which will justify the granting of a reissue patent which includes the matter withdrawn.").  Moreover, the court prohibits recapture based on principles of equity.  An applicant's surrender of subject matter places "competitors and the public . . . on notice . . . and may have [caused them] to rely on the consequent limitations on claim scope."  MBO, 474 F.3d at 1331; see also Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1384 (Fed. Cir. 1998) ("[T]he 'recapture rule' . . . ensur[es] the ability of the public to rely on a patent's public record."); Mentor

Corp. v. Coloplast, Inc., 998 F.2d 992, 993 (Fed. Cir. 1993) ("[T]he reissue statute cannot be construed in such a way that competitors, properly relying on prosecution history, become patent infringers when they do so."). Without a rule against recapture, an unscrupulous attorney could feign error and redraft claims in a reissue patent to cover a competing product, thereafter filing an infringement suit. See Hester, 142 F.3d at 1484 ("[H]ere, the second attorney draft[ed] the [reissue] claims nearly a decade later and with the distinct advantage of having before him the exact product offered by the now accused infringer.").

In applying the rule against recapture, we follow a three-step test. N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1349 (Fed. Cir. 2005) (explaining the three-step recapture test); Pannu, 258 F.3d at 1371 (same). First, the court construes the reissued claims to "determine whether and in what 'aspect' the reissue claims are broader than the [original] patent claims." Clement, 131 F.3d at 1468. Second, if the reissue claims are broader, the court determines whether the patentee surrendered subject matter and "whether the broader aspects of the reissued claim relate to [the] surrendered subject matter." Id. at 1468–69; see also id. at 1469–70. To determine whether a patentee surrendered subject matter, we ask "whether an objective observer viewing the prosecution history would conclude that the purpose of the patentee's amendment or argument was to overcome prior art and secure the patent." Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1323 (Fed. Cir. 2006). If the patentee surrendered by argument, he must clearly and unmistakably argue that his invention does not cover certain subject matter to overcome an examiner's rejection based on prior art. Medtronic, 465 F.3d at 1376 (holding that a patent attorney's

argument did not "clearly and unmistakably surrender" the subject matter); Hester, 142 F.3d at 1482 (explaining that "unmistakable assertions made to the Patent Office in support of patentability" "can give rise to a surrender for purposes of the recapture rule"). Third, a court must "determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule." Pannu, 258 F.3d at 1371.

In this case, the parties do not dispute the first and third steps of the recapture analysis. In the last appeal, this court addressed the first step. We held that "the terms 'relatively moved,' 'slidably receiving,' and their cognates permit the needle and guard to slide in any manner." MBO, 474 F.3d at 1333. In this appeal, MBO concedes that "[t]he first [step] is not in dispute here, as the broadening nature of the reissue claims was clearly explained to the Patent Office in the reissue application." MBO likewise concedes that the third step is not at issue because it did not narrow its reissue claims in any way. Accordingly, this court need only address the second step to determine whether MBO surrendered subject matter and "whether the broader aspects of [MBO's] reissued claim relate to [the] surrendered subject matter." Clement, 131 F.3d at 1468–69.

We agree with the district court that MBO violated the rule against recapture by claiming relative movement between the guard body and needle in the RE '885 patent. Substantial evidence supports the district court's finding that MBO clearly and unmistakably surrendered claiming a guard body that moved relative to a fixed needle. MBO twice overcame the examiner's rejections by emphasizing that the prior art disclosed a type of guard that moved relative to a fixed needle. In contrast, MBO

stressed that its needle moved relative to the guard by "slidably retracting." The following exchanges demonstrate MBO's surrender.

First, MBO distinguished its needle from Smith while prosecuting the '347 patent by arguing that Smith disclosed a fixed needle with a slidable member that moved forward to cover the needle. In its response to the examiner's rejection, MBO argued that Smith "discloses a usual needle . . . <u>fixed</u> to and extending from a conventional syringe barrel." MBO further explained that when a health care worker withdrew the needle in Smith, "the slidable member . . . is bodily moved forward . . . , whereupon after the needle is withdrawn, the <u>point only</u> of the needle lies behind [the] leg [of the side-mounted guard]." In other words, a health care worker in Smith would move the slidable member forward to cover the needle's tip. MBO asserted that in contrast to its invention, "[t]he needle [in Smith] is not <u>slidably received</u> in the barrel." The examiner "agree[d] with applicants' arguments regarding Smith," recognizing that MBO was limiting its invention to a needle that slidably retracted into the guard. MBO's exchange with the examiner about Smith thus demonstrates that MBO disclaimed a guard that moved forward to cover the fixed needle to persuade the examiner to allow its claims.

Second, MBO distinguished its needle from Bayless while prosecuting the '772 application by arguing that Bayless disclosed a fixed needle with a sheath that sprang forward to cover the needle. After the examiner rejected MBO's claims as obvious over Bayless, MBO argued that Bayless disclosed a "needle [that] is <u>fixed</u> to [the] body 'support chamber.'" According to MBO, "Bayless provides a separate hollow needle sheath . . . which is axially movable on [the] chamber . . . , which is propelled forwardly by a compression spring." In other words, the chamber in Bayless would spring forward

to cover a fixed needle. In contrast to Bayless, MBO asserted that its application disclosed a needle that was "slidable in the [guard] body" and a guard body "through which the needle . . . is initially extended (Fig. 3) and subsequently slidably retracted (Fig. 6B)." The examiner agreed, stating that "Bayless does not disclose a retractable needle." As in the exchange about Smith, MBO's correspondence with the examiner about Bayless demonstrates that MBO disclaimed a guard that moved forward to cover the fixed needle to persuade the examiner to allow its claims.

MBO's deliberate surrender of a guard body moving forward to cover a fixed needle proves fatal to its reissue claims. The surrender is directly related to the broader claims it sought in reissue. MBO's prosecuting attorney stated in his reissue declaration that the original claims "claim less tha[n] we had a right to claim in that they fail to claim clearly that any relative movement . . . will . . . prevent[] needlestick hazard, whether or not the needle moves toward the body and connected safety device, or whether the body and connected safety device advance over the needle." "MBO [thus] clearly sought in reissue to broaden the scope of its patent coverage by rewriting its claims to cover all relative movement, not just retraction." MBO, 474 F.3d at 1332. MBO's failure to claim relative movement was not "error without any deceptive intent." 35 U.S.C. § 251. MBO knew exactly how to claim relative movement. When prosecuting the '655 patent, MBO claimed a "disposable medical assembly" comprising, among other things, a "guide means and manipulating means being relatively movable." Because MBO surrendered a guard body that moved forward to cover a fixed needle and sought to reclaim relative movement in its reissue claims, MBO violated the rule against recapture.

2008-1288                                          15

MBO argues on appeal that its references to a retractable needle were not an attempt to overcome prior art. According to MBO, it was not trying to persuade the examiner to allow its claims based on retraction, but merely conceding that the prior art disclosed a retractable needle. MBO further argues that instead of distinguishing its invention from the prior art based on a retractable needle, it distinguished its invention based on its unique safety flange. But the record refutes MBO's argument that it referred to retraction in mere recognition of the prior art. MBO clearly relied on a retractable needle to distinguish its invention from syringes with guards that moved to cover a needle.

Moreover, MBO misunderstands the rationale behind the rule against recapture. The fact that some of the prior art may have disclosed a retractable needle cannot save MBO's reliance on its retractable needle to distinguish other prior art. "The public's reliance interest provides a justification for the recapture rule that is <u>independent of the likelihood that the surrendered territory was already covered by prior art</u> or otherwise unpatentable." <u>MBO</u>, 474 F.3d at 1332 (emphasis added). MBO also misunderstands how arguments as to one subject matter affect another. MBO's arguments distinguishing the prior art based on its safety flange do not affect its surrender of another subject matter: a patentee's arguments that emphasize one feature cannot cure arguments that clearly surrender another.

II.     Surrendering Subject Matter in a Parent Application

In holding that MBO violated the rule against recapture, we seek to clarify that a patentee may violate the rule against recapture by claiming subject matter in a reissue patent that the patentee surrendered while prosecuting a related patent application. We are aware of courts that have held that patentees may only violate the rule against

recapture by surrendering subject matter while prosecuting "the patent that is corrected by the reissue patent." U.S. Filter Corp. v. Ionics, Inc., 68 F. Supp. 2d 48, 72 (D. Mass. 1999); see also 4A Donald S. Chisum, Chisum on Patents § 15.03[2][e][vi], at 15-107 to -108 (2004) (citing to no Federal Circuit opinions addressing recapture of subject matter surrendered in a related patent). Under this erroneous theory, the rule against recapture does not contemplate surrenders made while prosecuting the original application or any precedent divisional, continuation, or continuation-in-part applications. U.S. Filter Corp., 68 F. Supp. 2d at 72. This error stems from a misunderstanding of the term "original patent" in 35 U.S.C. § 251. See id. at 69–72. The term "original patent" refers to the patent corrected by reissue; it does not limit the universe of patents and their prosecution histories that can be the basis for surrendered subject matter. We have never limited our review of recapture only to the prosecution history for the patent corrected by reissue.

In North American Container, we held that a patentee's reissue claims were invalid for recapturing subject matter that the patentee surrendered in arguments and amendments while prosecuting a parent application. 415 F.3d at 1349–50. Even though the reissue patent corrected a patent that issued from a continuation application—not from the original application—we found that the patentee's surrender of subject matter during the original application carried through to the continuation application. Id. at 1339–40, 1349–50; cf. Kim, 465 F.3d at 1321–24 (rejecting an alleged infringer's argument that the patentee surrendered subject matter from an abandoned parent application to overcome the examiner's rejection based on obviousness); Clement, 131 F.3d at 1471–72 (rejecting a patent applicant's argument

that the rule against recapture should not apply because the reissue claim was narrower than the original claim from an abandoned patent application in some respects). To be sure, most of our precedents involving recapture address simpler prosecution histories, such as alleged surrenders during the prosecution of the patent corrected by reissue.[3] But neither the reissue statute nor the rule against recapture's rationale limits surrender to the prosecution history for the patent corrected by reissue.

Congress has never limited the reissue statute's error requirement to errors made while prosecuting the patent corrected by reissue. Starting in 1832, Congress granted the Secretary of State the authority to reissue a patent for an invention when the patentee surrendered the claims of his original patent that were "invalid or inoperative" because the patentee failed to provide an adequate written description of the invention and how to make and use it through "inadvertence, accident, or mistake, and without any fraudulent or deceptive intent." Act of July 3, 1832, ch. 162, § 3, 4 Stat. 559, 559. Congress has since made several substantive changes to the reissue statute, but has never limited the "error without any deceptive intention" requirement to errors made during the prosecution of only the patent corrected by reissue. 35 U.S.C.

---

[3] See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1364–65, 1367–68 (Fed. Cir. 2009); Medtronic, 465 F.3d at 1366–69, 1372–79; In re Doyle, 293 F.3d 1355, 1356–57 (Fed. Cir. 2002); Pannu, 258 F.3d at 1368–70; Hester, 142 F.3d at 1474–77; Clement, 131 F.3d at 1471–72; Mentor, 998 F.2d at 995–96; Whittaker Corp. v. UNR Indus., Inc., 911 F.2d 709, 710–11 (Fed. Cir. 1990); Weiler, 790 F.2d at 1579; Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 821–22, 826 (Fed. Cir. 1984); Ball Corp. v. United States, 729 F.2d 1429, 1432–33 (Fed. Cir. 1984); In re Mead, 581 F.2d 251, 252–54, 257 (CCPA 1978); In re Orita, 550 F.2d 1277, 1278–79 (CCPA 1977); In re Wadlinger, 496 F.2d 1200, 1201–03, 1207 (CCPA 1974); In re Richman, 409 F.2d 269, 270, 273–75 (CCPA 1969); In re Wesseler, 367 F.2d 838, 842–44 (CCPA 1966); In re Willingham, 282 F.2d 353, 353–54, 357 (CCPA 1960); In re De Jarlais, 233 F.2d 323, 325–26 (CCPA 1956); In re Byers, 230 F.2d 451, 454–56 (CCPA 1956); Haliczer, 356 F.2d at 543–45.

§ 251; see also 35 U.S.C. § 64 (1946); Revised Statutes § 4916 (1878); Act of July 4, 1836, ch. 357, § 13, 5 Stat. 117, 122; Act of July 3, 1832, ch. 162, § 3, 4 Stat. 559, 559.

Neither this court nor the U.S. Supreme Court has ever applied the rule against recapture in a way that only considers the prosecution history for the patent corrected by reissue. Rather, both courts have long applied the rule against recapture to safeguard the reissue statute's error requirement and to protect the public's reliance interest on the patentee's prosecution history. As early as 1879, the Court opined that reissue claims would be invalid if a patentee obtained "claims [that he] once formally abandoned . . . , in order to get his letters-patent through." Legget v. Avery, 101 U.S. 256, 259 (1879). According to the Court, a patentee could not obtain a reissue patent through "[t]he pretence that an 'error had arisen by inadvertence, accident, or mistake,'" when the reissue covered claims that the patentee had "express[ly] disclaime[d]." Id. (quoting Act of July 3, 1832, ch. 162, § 3, 4 Stat. 559, 559). Such pretence was "the occasion of immense frauds against the public." Id. The Court would later explain that Legget established a defense to patent infringement that rendered "the reissued patent . . . void." Mahn v. Harwood, 112 U.S. 354, 359 (1884). According to the Court, the patent was void because the patentee obtained the reissue patent without satisfying the reissue statute's error requirement. Consequently, the Court held that when "the reissued patent embraced a claim which had been presented on the application for the original patent and rejected," "the omission of that claim in the original was not, and could not have been, the result of inadvertence, accident, or mistake." Id.

This court has followed the same rationale in applying the rule against recapture. As noted above, we apply the rule to ensure that patents are only reissued to correct a

legitimate error and to protect the public against patentees who would reclaim subject matter surrendered during prosecution. See, e.g., MBO, 474 F.3d at 1331; Medtronic, 465 F.3d at 1372–73; Mentor, 998 F.2d at 995–96. If we limited our recapture review to the prosecution history for the patent corrected by reissue, we would severely undercut the rule against recapture's public-reliance rationale: a patentee could deliberately surrender subject matter during prosecution of an earlier patent, obtain a continuation patent without mentioning the surrendered subject matter, and then seek a reissue patent based on the continuation so as to recapture the subject matter. Such a myopic review would facilitate "immense frauds against the public." Legget, 101 U.S. at 259.

In contrast to such limited review, this court reviews a patent family's entire prosecution history when applying both the rule against recapture and prosecution history estoppel. "The recapture rule . . . serves the same policy as does the doctrine of prosecution history estoppel: both operate . . . to prevent a patentee from encroaching back into territory that had previously been committed to the public." MBO, 474 F.3d at 1332. Unsurprisingly, this court's prosecution-history-estoppel cases recognize that "prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1333 (Fed. Cir. 2003); see also Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1305 (Fed. Cir. 2001) ("The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit."); Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently

issued patents that contain the same claim limitation."). Because the rule against recapture and prosecution history estoppel both protect the public's interest in relying on a patent's prosecution history, we think equity requires a review of a patent family's prosecution history to protect against recapture in a reissue patent.

III.    Invalidating Reissue Claims

Finally, the district court erroneously invalidated the entire RE '885 patent based solely on its holding that reissue claims 27, 28, 32, and 33 were invalid under the rule against recapture. Neither party disputes that the district court erred in this regard. When a reissue patent contains the unmodified original patent claims and the reissue claims, a court can only invalidate the reissue claims under the rule against recapture. See, e.g., N. Am. Container, 415 F.3d at 1349–50 (affirming summary judgment of non-infringement of original claims 1–28 and summary judgment of invalidity of reissue claims 29–42 under the rule against recapture); Clement, 131 F.3d at 1472 (explaining that a defective reissue declaration that erroneously claims that the applicants mistakenly claimed less than they had the right to claim could not invalidate the original patent claims). Original patent claims will always survive a recapture challenge under the first step of our rule-against-recapture analysis. Under the first step, we construe the reissued claims to "determine whether and in what 'aspect' the reissue claims are broader than the [original] patent claims." Clement, 131 F.3d at 1468. The original claims cannot be broader than themselves.

Because the district court erroneously held the entire RE '885 patent invalid, it did not address Becton's motion for summary judgment of non-infringement on claims 13, 19, and 20. We decline Becton's invitation to address its non-infringement

arguments for the first time on appeal when the district court has yet to address them below. See TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1160 (Fed. Cir. 2004) (declining to address infringement when the district court did not address the issue below). On remand, the district court must consider Becton's motion for summary judgment of non-infringement.

## CONCLUSION

For the foregoing reasons, we affirm the district court's holding that the RE '885 patent claims 27, 28, 32, and 33 are invalid, but we reverse the district court's invalidation of all other claims. We remand to the district court to address Becton's motion for summary judgment of non-infringement on original claims 13, 19, and 20.

### AFFIRMED IN PART, REVERSED IN PART and REMANDED

## COSTS

Each party shall bear its own costs.