# United States Court of Appeals for the Federal Circuit

———————————

## IN RE:  JOHN BRADLEY MCDONALD,
*Appellant*

———————————

### 2021-1697

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/658,050.

———————————

Decided:  August 10, 2022

———————————

ALAN BURNETT, Law Office of R. Alan Burnett, Bellevue, WA, argued for appellant John Bradley McDonald.

ROBERT MCBRIDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Katherine K. Vidal.  Also represented by BENJAMIN T. HICKMAN, THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

———————————

Before NEWMAN, STOLL, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

This appeal arises from the decision of the Patent Trial and Appeal Board rejecting claims 1–7, 10, 12–16, and 18–38 ("the reissue claims") of the application for reissue of

U.S. Patent No. 8,572,111 ("the '111 patent"). The Board rejected the reissue claims as based on a defective reissue declaration and further rejected claims 1–7, 10, 12–14, and 29–38 as impermissibly attempting to recapture subject matter that the patentee intentionally surrendered during prosecution. *Ex parte McDonald*, No. 2019-002063, 2020 WL 2990970 (P.T.A.B. May 29, 2020). The Board subsequently denied a request for rehearing of its May 29, 2020, decision. J.A. 23–37. Mr. McDonald's appeal to this court followed. For the reasons below, we affirm.

## I. BACKGROUND

In 2008, a patent application was filed for methods and systems related to the display of primary and secondary search results in response to search queries. J.A. 1113, 1148–53. Mr. John Bradley McDonald was named as the inventor and Masterfile Corporation was named as the assignee.[1] J.A. 1113. The application's original claims 1–9 and 19–21 did not recite a "processor" for conducting the claimed searches. J.A. 1148–53. The examiner rejected those claims as being directed to patent-ineligible subject matter under 35 U.S.C. § 101. J.A. 1208.

In response, Mr. McDonald amended those claims, adding a "processor" to certain claim limitations, J.A. 1345–51, and arguing that the new "processor" limitations overcame the § 101 rejection by tying "the methods recited in claims 1 and 19 to a particular machine (i.e.[,] the processor)," which "impose[d] meaningful limits in the scope of claims 1 and 19," J.A. 1353. The examiner agreed and withdrew the § 101 rejection. J.A. 1366–68. The 2008 patent

---

[1]    Throughout the prosecution history, sometimes the patent owner rather than Mr. McDonald is listed as the actor. For ease of reference, we will refer to Mr. McDonald throughout the opinion.

application ultimately issued as U.S. Patent No. 8,280,901 ("the '901 patent"). J.A. 1601.

While the application leading to the '901 patent was pending, Mr. McDonald filed a continuation application, which ultimately issued as the '111 patent. J.A. 44–72. The claims in the continuation application included "processor" limitations like those added to the parent application to overcome the § 101 patent eligibility rejection. J.A. 1636–43.

In 2015, Mr. McDonald filed a reissue application seeking to broaden the claims of the '111 patent. J.A. 114, 128–29. Specifically, Mr. McDonald amended claim 1 of the '111 patent as follows:

> 1. (Amended) A computer-implemented method of displaying search results in a search and display window, the method comprising:
>
>> a) receiving a primary search query from a user;
>>
>> b) determining a primary search result <u>comprising a first plurality of search results</u> [*using a processor executing*] <u>by executing</u> the primary search query;
>>
>> c) displaying a plurality of primary electronic representations representing at least a subset of [data] <u>search results</u> in the primary search result, the plurality of primary electronic representations being displayed in a primary search results portion of the search and display window, wherein each primary electronic representation represents a <u>single respective</u> corresponding [data item] <u>search result</u> in the primary search result;

d) receiving a secondary search query, wherein the secondary search query comprises a user selection of one of the primary electronic representations;

e) determining a secondary search result [*using the processor executing*] <u>comprising a second plurality of search results by executing</u> the secondary search query, wherein at least a portion of the [data] <u>search results</u> in the primary search result is different from the [data] <u>search results</u> in the secondary search result, wherein the secondary search result is determined by <u>at least</u> one of: (i) a visual similarity search on the [data item] <u>search result</u> represented by the selected primary electronic representation, and (ii) a metadata similarity search based on metadata associated with the [data item] <u>search result</u> represented by the selected primary electronic representation; and

f) displaying a plurality of secondary electronic representations representing at least a subset of [data] <u>the search results</u> in the secondary search result, the plurality of secondary electronic representations being displayed in a secondary search results portion of the search and display window, wherein each secondary electronic representation represents a <u>single respective</u> corresponding [data item] <u>search result</u> in the secondary search result;

wherein <u>when the plurality of secondary electronic representations are displayed, at least a portion of</u> the plurality of primary electronic representations [and the

plurality of secondary electronic representations] are visible at the same time; and wherein [the data in] the primary search result is unchanged by display of the plurality of secondary electronic representations [secondary search result].

J.A. 73–74 (disputed claim limitations italicized; bracketing representing proposed removals in the reissue application; and underlining representing proposed additions in the reissue application); *see also McDonald*, 2020 WL 2990970, at *1–2.

Notably, the reissue application included amendments to remove the "processor" limitations that Mr. McDonald had previously added. J.A. 131–39, 331–39, 428–38. The declaration attached to the reissue application explained his amendments related to the "processor" limitations:

After reviewing the specification and the issued claims, Applicant states that there is at least one error in the original patent by reason of the patentee claiming less than he had the right to claim in United States Patent No. 8,572,111.

Applicant found that independent claims 1 and 29 include elements that the Applicant believes to be unnecessary to the patentability and operability of the claimed inventions and are thus unnecessarily narrowing. In particular, the recitation of "using a processor executing" and "using the processor executing" in claim 1 and "using a processor executing" in claim 29 are unnecessary to the patentability and operability to the inventions of claims 1 and 29.

J.A. 128. The examiner rejected claims 1–7, 10, 12–16, and 18–38 as obvious. J.A. 602–35. Mr. McDonald appealed to the Board.

The Board affirmed the obviousness rejection of claims 35–38 and entered two new grounds of rejection.

*McDonald*, 2020 WL 2990970, at \*9. First, the Board rejected the reissue claims as being based on a defective reissue declaration lacking an error correctable by reissue. *Id.* at \*9, 12–13. Second, the Board also rejected claims 1–7, 10, 12–14, and 29–38 as impermissibly attempting to recapture subject matter that the patentee intentionally surrendered during prosecution to overcome a § 101 patent eligibility rejection. *Id.* at \*9–12. Mr. McDonald filed a request for rehearing, arguing against the Board's application of the recapture rule. J.A. 1024–37. The Board denied the request. J.A. 23–37.

Mr. McDonald appealed to this court pursuant to 35 U.S.C. § 141. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

Mr. McDonald contends that the Board erred in rejecting reissue claims 1–7, 10, 12–14, and 29–38 under 35 U.S.C. § 251 as being an improper recapture of surrendered subject matter. Appellant's Br. 15. He also contends that the Board erred by rejecting all the reissue claims as being based on an Inventor Reissue Declaration that was defective for failing to identify an error that is correctable through reissue. *Id.* We consider each of Mr. McDonald's arguments in turn.

Whether the recapture rule applies to a particular set of facts—that is, whether the claims of a reissue patent violate 35 U.S.C. § 251—is a question of law, which we review de novo. *In re Mostafazadeh*, 643 F.3d 1353, 1358 (Fed. Cir. 2011). The underlying factual findings are reviewed for substantial evidence. *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1370 (Fed. Cir. 2001).

### A. The Reissue Statute and the Recapture Rule

Over a century ago, the Supreme Court recognized that a patentee may seek reissue of a patent if she erroneously claimed less than she had a right to claim in the original

patent. *See, e.g., Leggett v. Avery*, 101 U.S. 256 (1879). Subsequently, the reissue statute was codified to delineate the circumstances where a patent may be reissued: when it "is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid." 35 U.S.C. § 251. Stemming from the reissue statute, the recapture rule provides that a reissue will not be granted to "recapture" claimed subject matter that was surrendered during prosecution to obtain the original claims. In the context of pre-AIA[2] § 251, we have explained what errors can be appropriately corrected through reissue and what limitations are imposed by the recapture rule. *See Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1267 (Fed. Cir. 2012) ("[A] patentee may surrender a patent and seek reissue enlarging the scope of the original patent's claims if through error without any deceptive intent he claimed less than he had a right to claim in the original patent and he applies for reissue within two years from the grant of the original patent." (cleaned up)); *Ball Corp. v. United States*, 729 F.2d 1429, 1436 (Fed. Cir. 1984) ("The recapture rule bars the patentee from acquiring, through reissue, claims that are of the *same* or of *broader scope* than those claims that were canceled from the original application. On the other hand, the patentee is free to acquire, through reissue, claims that are *narrower* in scope than the canceled claims." (emphasis in original)).

We have further expounded upon the limits and the equitable underpinnings. The reissue statute is "based on fundamental principles of equity and fairness." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986). Nonetheless, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original

---

[2]    "AIA" refers to the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011).

application." *Id.* at 1582. Congress struck a balance between "the competing interest of providing a patentee with an opportunity to correct errors of inadequate claim scope with the public interest in finality and certainty of patent rights, and legislated in favor of allowing the patentee to correct its errors through broadening, if necessary." *In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012).

In addressing pre-AIA § 251, we have explained that the statute provides the public with two safeguards against such broadening. First, "the public is on notice for two years following the issuance of a patent that the patent can be broadened to recapture matter 'dedicated to the public' through error." *Id.* Analogously, "'the recapture rule' prevents a patentee from regaining through reissue subject matter surrendered during prosecution, thus ensuring the ability of the public to rely on a patent's public record." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1384 (Fed. Cir. 1998). Second, reissue is limited to "instances where the patentee could demonstrate an 'error without any deceptive intention.'" *In re Youman*, 679 F.3d at 1342; *see also MBO Lab'ys, Inc. v. Becton, Dickinson & Co.,* 602 F.3d 1306, 1314 (Fed. Cir. 2010) ("Without a rule against recapture, an unscrupulous attorney could feign error and redraft claims in a reissue patent to cover a competing product, thereafter filing an infringement suit."); *Mentor Corp. v. Coloplast, Inc.*, 998 F.2d 992, 996 (Fed. Cir. 1993) ("Error under the reissue statute does not include a deliberate decision to surrender specific subject matter in order to overcome prior art, a decision which in light of subsequent developments in the marketplace might be regretted.").

The AIA amended § 251 to delete the phrase "without any deceptive intention" after "error" from the revised statute. *See* § 20(b)(1)(B), 125 Stat. at 333–34 (effective Sept. 16, 2012). Neither party argues that this change to the statute is material to our decision today. *See* Appellant's

Br. 34 n.1; Appellee's Br. 34.  The revised reissue statute provides:

> Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.  No new matter shall be introduced into the application for the reissue.

35 U.S.C. § 251(a).

Since the enactment of the AIA, we have addressed the requirements of § 251 in certain cases.  *See, e.g.*, *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358–60 (Fed. Cir. 2014) (applying the requirements of § 251 but not reaching the question of whether the recapture rule applies); *Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1121 (Fed. Cir. 2015) (applying the recapture rule as set out in *In re Youman*).  It is against this backdrop that we now consider whether the recapture rule applies to claim amendments made to overcome a § 101 patent eligibility rejection.

Under the three-step recapture rule analysis, we consider: (1) whether and in what aspect the reissue claims are broader than the patent claims; (2) if broader, whether those broader aspects of the reissue claim relate to the surrendered subject matter; and (3) if so, whether the surrendered subject matter has crept into the reissue claim.  *In re Youman*, 679 F.3d at 1343–45 (citing *In re Mostafazadeh*, 643 F.3d at 1360 ("The recapture rule is triggered only where the reissue claims are broader than the patented claims because the surrendered subject matter has been

reclaimed in whole or substantial part (i.e., an added limitation has been eliminated or revised).")).

Here, the facts are simple. By first adding the "processor" limitations during prosecution of the original claims, then removing the exact terms "using a processor executing" and "using the processor executing," Mr. McDonald seeks to reclaim a broader claim scope related to the surrendered subject matter that has now crept back into the reissue claim. *Cf.* J.A. 73–89, 1345–53.

Notably, the reissue statute's error requirement contemplates "inadvertence or mistake." *In re Youman*, 679 F.3d at 1343. However, Mr. McDonald made no mistake. "Deliberate withdrawal or amendment of claims to obtain a patent cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251 . . . ." *MBO Lab'ys,* 602 F.3d at 1313 (cleaned up). Mr. McDonald deliberately amended the claim scope during prosecution of the parent application, explaining that the new "processor" limitations overcame the § 101 rejection by tying "the methods recited in claims 1 and 19 to a particular machine (i.e.[,] the processor)," which "impose[d] meaningful limits in the scope of claims 1 and 19." J.A. 1353. He cannot now use the reissue application as a Trojan horse to recapture that which he deliberately gave up.

We have previously explained that "this court reviews a patent family's entire prosecution history when applying both the rule against recapture and prosecution history estoppel." *MBO Lab'ys*, 602 F.3d at 1318. "Because the rule against recapture and prosecution history estoppel both protect the public's interest in relying on a patent's prosecution history, we think equity requires a review of a patent family's prosecution history to protect against recapture in a reissue patent." *Id.* We have also rejected the erroneous theory that the recapture rule "does not contemplate surrenders made while prosecuting the original application or any precedent divisional, continuation, or

continuation-in-part applications. . . . We have never limited our review of recapture only to the prosecution history for the patent corrected by reissue." *Id.* at 1316.

The public's reliance interest on a patent's public record applies not only to subject matter surrendered in light of § 102 or § 103 rejections but also to subject matter surrendered in light of § 101 rejections. Mr. McDonald focuses on the "prior art" language of certain decisions—citing language describing the initial amendments as made in an effort "to overcome a prior art rejection"—in an attempt to limit the recapture rule to § 102 or § 103 rejections. Appellant's Br. 25–27. *See, e.g.*, *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1372–73 (Fed. Cir. 2006) ("[T]he deliberate surrender of a claim to certain subject matter during the original prosecution of the application for a patent made in an effort to overcome a prior art rejection is not such 'error' as will allow the patentee to recapture that subject matter in a reissue." (internal quotation marks omitted)). Although we previously addressed cases centered on prior art rejections, this does not mean that the recapture rule is limited to that context. *See, e.g.*, *In re Clement*, 131 F.3d 1464, 1469 (Fed. Cir. 1997) (involving a prior art rejection); *In re Youman*, 679 F.3d at 1343 (same); *MBO Lab'ys*, 602 F.3d at 1316 ("The public's reliance interest provides a justification for the recapture rule that is *independent of the likelihood that the surrendered territory was already covered by prior art* or otherwise unpatentable." (emphasis in original)).

Likewise, we are unpersuaded by Mr. McDonald's citation to *Cubist*. Appellant's Br. 25–27. While we held that the recapture rule did not apply in that case involving a § 112 amendment because the rule "applies only if the patentee surrendered subject matter in the original prosecution in order to overcome a prior art rejection," this phrasing merely summarized the subject matter of the *In re Clement* case. *Cubist,* 805 F.3d at 1121. Rather, in *Cubist*, the outcome hinged on our determination that

canceling the claim in response to the indefiniteness rejection did not constitute intentional surrender of claim scope. *Id.* at 1121–22. The recapture rule is "rigid and properly so in that it effects an express statutory limitation on broadened reissue." *Ball Corp.*, 729 F.2d at 1438. The common thread through our prior decisions remains whether there is an intentional surrender of claim scope. The well-tailored scope of our prior decisions and the fact that many of our prior cases involved prior art rejections do not expressly preclude the application of the recapture rule to amendments made for other reasons.

We also disagree with Mr. McDonald's reliance on the Manual of Patent Examining Procedure ("MPEP") § 1412.02 to argue that there was no surrender in the original application, including the parent application, because the amendment was not made to overcome a prior art rejection. Appellant's Br. 28–34. Even as Mr. McDonald acknowledges, "[t]he MPEP and guidelines 'are not binding on this court.'" Appellant's Br. 36 (quoting *In re Fisher,* 421 F.3d 1365, 1372 (Fed. Cir. 2005)); *see also* J.A. 30–31 (Board reiterating that the "MPEP, while informative, does not have the force of law"). Indeed, the MPEP merely summarizes our underlying precedent, which refers to cases involving amendments made to overcome prior art rejections but does not expressly prohibit the recapture rule from applying to amendments made for other purposes.

We reject the argument that the recapture rule leaves a unique gap that would permit the recapture of claim scope surrendered in response to § 101 rejections. Despite being given the opportunity on multiple instances to explain what policy considerations might justify treating § 101 rejections differently than § 102 or § 103 rejections, Mr. McDonald has articulated no reasons persuasive to this court. *See, e.g.*, Oral Arg. at 0:06–2:10, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl= 21-1697_03102022.mp3. While Mr. McDonald faults § 101 case law as having "changed dramatically over the last 15

years," *id.* at 0:36–1:15, these changes do not justify giving disparate treatment to various statutory provisions under the recapture rule. It would, furthermore, be illogical and inefficient to freeze all rules relating to § 101 until § 101 law is considered "consistent" and "stable." *Id.* at 0:33, 1:19.

Accordingly, we affirm. The Board properly applied the recapture rule to bar Mr. McDonald's attempt to reclaim claim scope already surrendered during prosecution. Because Mr. McDonald deliberately—not erroneously or inadvertently—added the "processor" limitations during prosecution of the original claims to overcome the § 101 rejection, the recapture rule does not permit him to now remove those limitations to broaden his claim.

### B. The Defective Inventor Reissue Declaration

Mr. McDonald also contends that the Board erred by rejecting the reissue claims as based on a defective inventor reissue declaration. A reissue declaration must "specifically identify at least one error pursuant to 35 U.S.C. § 251 being relied upon as the basis for reissue." 37 C.F.R. § 1.175(a). The Board found that "the statement of error in the Reissue Declaration relates to an error that is uncorrectable by reissue." *McDonald*, 2020 WL 2990970, at *12.

We agree with the Board. The error pinpointed in the Inventor Reissue Declaration—the existence of the allegedly unnecessary "processor" limitations—is uncorrectable by reissue because doing so would violate the recapture rule. Mr. McDonald's argument on the defectiveness of the declaration rises and falls with his argument on the violation of the recapture rule. Indeed, Mr. McDonald conceded as much at oral argument. *See* Oral Arg. at 35:53–36:03 (Q: "Do you agree that the argument on the Inventor Reissue Declaration rises and falls with how we rule on the overall recapture issue?" A: "Yes, I do."). This purported error cannot be the basis on which the Board permits recapture of the proposed claims.

### III. CONCLUSION

The Board did not err in rejecting reissue claims 1–7, 10, 12–14, and 29–38 of the '111 patent as violating the recapture rule and all the reissue claims as being premised on a defective inventor reissue declaration. We have considered Mr. McDonald's other arguments and find them unpersuasive. Accordingly, we affirm.

**AFFIRMED**

COSTS

No costs.