# United States Court of Appeals for the Federal Circuit

---

(Serial No. 09/313,532)

**IN RE ROGER YOUMAN AND MARNEY MORRIS**

---

2011-1136

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: May 8, 2012

---

LAURENCE S. ROGERS, Ropes & Gray, LLP, of New York, New York, argued for appellants. With him on the brief was PRISTINE JOHANNESSEN.

SCOTT C. WEIDENFELLER, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and JANET A. GONGOLA, Associate Solicitor.

---

Before LOURIE, SCHALL, and PROST, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* LOURIE.

PROST, *Circuit Judge*.

Roger Youman and Marney Morris (collectively, "applicants") appeal from a decision of the United States Patent and Trademark Office ("PTO"), Board of Patent Appeals and Interferences ("Board"). The Board affirmed the examiner's rejection of claims 24-27, 29-43, and 45-55 in the applicants' reissue patent application under 35 U.S.C. § 251. *Ex parte Youman*, No. 2010-007029, 2010 WL 3503790 (B.P.A.I. Sept. 7, 2010) ("*Board Decision*"). Because the Board did not properly apply the recapture rule's three-step analysis, we vacate and remand.

## BACKGROUND

The invention at issue is directed to an electronic program schedule system for a television that allows the user to access and navigate television program information efficiently. As a part of this system, a user can access a "By Title" display that lists programs alphabetically by title. A user can either scroll through this list or search it by entering the first few letters of a program title using the remote. As filed, U.S. Patent Application 08/346,603 contained a single claim for the invention. Claim 1 ("original claim 1") of the application read as follows:

> An electronic television programming guide for use in connection with a television receiver for displaying a plurality of television programs from a plurality of program sources on a plurality of user-selectable television channels comprising:
> user control means for issuing control commands, including channel-control commands;
> data processing means for receiving said control commands and for generating video control commands;

> a video display generator adapted to receive video control commands from said data processing means for generating and displaying a plurality of television program titles on said television receiver, said plurality of television programs displayed alphabetically by title; and
>
> *selection means for allowing said user to select a title for display on said television receiver by selecting the first n characters of said title, where n is greater than or equal to one*; said data processing means being responsive to said selection means and adapted to select said plurality of television program titles for display on said television receiver in response to said n characters.

J.A. 909 (emphasis added). During prosecution, with all the other limitations in the prior art, the examiner rejected original claim 1 based on the "selection means" limitation as obvious under 35 U.S.C. § 103 in light of three prior art references: U.S. Patent No. 5,241,671 ("Reed patent"), U.S. Patent No. 5,253,066 ("Vogel patent"), and U.S. Patent No. 5,353,121 ("Young patent"). The Young patent teaches a television programming guide that can display television program titles on the screen by using a user control. The Vogel patent teaches a television programming guide that includes selecting means such as four triangular arrow buttons and a selection button for selecting programs from a list, but does not disclose displaying programs alphabetically by title or selecting a title by selecting the first few characters of titles. The Reed patent teaches a multimedia search system of alphabetically-listed titles, in which a user can select a title by entering one or more characters of a selected title. As each character is entered, the Reed patent teaches that the program will list titles that are closest to the entry displayed. The Reed system is used

on a personal computer with access to a keyboard of alphanumeric keys to enter searchable titles.

The examiner found that it would have been obvious to one of ordinary skill in the art to modify the television guide systems in the Young and Vogel patents, which allow users to select titles by scrolling through programs that are not in alphabetical order, to include a means of selecting a title from an alphabetical list by typing the first n characters of the title into a keyboard, as taught in Reed. The applicants then amended original claim 1 and added claims 2-23. In remarks filed with the amendment, they argued that they overcame the prior art by using the keys on the television control device to select the characters, by, for example, cycling through the alphabet, rather than entering each character using a keyboard, as taught in Reed.[1] After a supplemental amendment, the exam-

---

[1]    Specifically, the applicants explained that:

[A]lthough Reed may accomplish [search-by-title capability] for a database search system using a keyboard as the input device, it does *not* teach or suggest such a system for an EPG [Electronic Program Guide] . . . [T]he system disclosed in Reed operates using a full keyboard. As such, it is a simple matter to type in the first few letters of an article title. In contrast, in an EPG environment, the user control device is typically a hand-held remote control transmitter with only a very limited number of keys. Therefore, in terms of performing searching based on alphanumeric characters, an EPG presents a problem not present in nor solved by systems such as that described in Reed. Applicants solve this problem by using the existing keys on the remote control device to input characters of a program title. . . . For example, as disclosed in applicants' specification, the up/down arrow keys used for changing chan-

iner issued a notice of allowability for claims 1-23, concluding that the means of selecting characters by cycling forward, backward, up and down through a list of alphanumeric characters was not obvious in light of the prior art.

On May 13, 1997, U.S. Patent Number 5,629,733 ("'733 patent") issued. Claim 1 of the '733 patent ("issued claim") reads as follows:

> An electronic television programming guide for use in connection with a television receiver for displaying a plurality of television programs from a plurality of program sources on a plurality of user-selectable television channels comprising:
>
> user control means for issuing control commands, including channel-control commands;
>
> data processing means for receiving said control commands and for generating video control commands;
>
> video display generator means adapted to receive video control commands from said data processing means for generating and displaying a visual display of a plurality of television program titles on said television receiver, said plurality of television program titles arranged alphabetically by title; and
>
> selection means for allowing said user to select a title for display on said television receiver by selecting the first n characters of said title,

> nels in normal television mode may be used to cycle through the letters A-Z and the numbers 0-9 in order to choose the individual letters in a program title.

J.A. 973-74.

where n is greater than one; said data processing means being responsive to said selection means and adapted to select said plurality of television program titles for display on said television receiver in response to said n characters;

wherein said video display generator means displays said n characters and said selection means *comprising means for causing each of said n characters to cycle forward and backward through a plurality of alphanumeric characters* and means for assigning one of said alphanumeric characters to each of said n characters.

'733 patent col.34 l.49 – col.35 l.10 (emphasis added).

On May 13, 1999, within two years of the '733 patent issuing, the applicants filed reissue application 09/313,532, adding claims 24-55. In the accompanying declaration, they stated that "U.S. patent 5,629,733 is partly inoperative by reason of said patent claiming less than we had a right to claim in said patent." J.A. 334. Following a non-final rejection of claims 24 and 40 under 35 U.S.C. § 251, the applicants amended claim 24 ("reissue claim") to read as follows:

An electronic television programming guide for use in connection with a television receiver for displaying a plurality of television programs from a plurality of sources on a plurality of user-selectable television channels comprising:

a wireless remote control, *comprising nonalphanumeric keys*, that generates control commands;

a data processor that receives the control commands from the wireless remote control; and

a video display generator connected to the data processor that displays an alphabetically-

arranged visual display of a plurality of television program titles on said television receiver,

wherein a user may search for a title to be displayed by selecting n characters with the wireless remote control, where n is greater than one, wherein each of the n characters may be selected with the wireless remote control from a plurality of displayed alphanumeric characters *by changing from a first character to a second character using the nonalphanumeric keys.*

J.A. 502. On December 4, 2007, the examiner issued a final rejection of claims 24-44 under 35 U.S.C. § 251 because they improperly recaptured subject matter that was surrendered in the application for the '733 patent.

The applicants appealed. The Board applied the three-step recapture rule analysis to affirm the examiner's rejection of the reissue claims. Under step one, the Board found that the reissue claim was broader than the issued claim but narrower than the original claim. The reissue claim was broader than the issued claim, the Board found, because the "changing" limitation in the reissue claim was broader in scope than the "cycling" limitation in the issued claim. The Board found that the reissue claim was narrower than the original claim because the original claim did not contain any limitation related to how the characters changed, whereas the reissue claim did. Under step two, the Board determined that the broadening related to the surrendered subject matter. Relying on the Manual of Patent Examining Procedure ("MPEP") § 1402.02 (I)(C) (8th ed., rev. 7, July 2008) and *North American Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335 (Fed. Cir. 2005), the Board held that because the reissue claim broadened patented claim 1 to an intermediate scope, it constituted an im-

permissible recapture of surrendered subject matter. *Board Decision*, 2010 WL 3503790, at *9. The Board articulated step 3 as allowing a reissue claim to escape the recapture rule only through other materially narrowing limitations "if the narrowing limitation is directed to one or more 'overlooked aspects' of the invention." *Id.* at *10. It concluded that the other potentially narrowing limitations in this case—the "wireless remote," "nonalphanumeric keys," and "changing" limitations—were not overlooked during prosecution and thus the reissue claim could not avoid the recapture rule. *Id.* at *11.

The applicants timely appealed. This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

On appeal, the applicants are challenging whether the recapture rule does indeed prevent them from claiming "changing" as a selecting means in reissue claim 24.

I

Prior to evaluating the Board's rejection based on the recapture rule, it is important to understand the statutory source from which the judicial recapture rule stems—the reissue statute. That statute provides that:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall . . . reissue the patent for the invention disclosed in the original patent . . . . No reissued patent shall be

granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

35 U.S.C. § 251.

Thus, the statute allows a patentee to broaden claims in its original patent if the patentee can show "error without any deceptive intention." *Id.* With regard to this broadening, Congress weighed the competing interest of providing a patentee with an opportunity to correct errors of inadequate claim scope with the public interest in finality and certainty of patent rights, and legislated in favor of allowing the patentee to correct its errors through broadening, if necessary. *See In re Doyle*, 293 F.3d 1355, 1363-64 (Fed. Cir. 2002); *In re Graff*, 111 F.3d 874, 877 (Fed. Cir. 1997). Yet, in doing so, Congress provided the public with two safeguards against this broadening. First, the reissue statute requires a patentee to file for a broadening reissue patent within two years of the issuance of the patent. 35 U.S.C. § 251. As a result, the public is on notice for two years following the issuance of a patent that the patent can be broadened to recapture matter "dedicated to the public" through error; after the two year period, the public can definitively rely on the scope of the patent claims. *Doyle*, 293 F.3d at 1364 ("[T]he public knows, or should know, that an issued patent can be broadened by reissue during a two-year period following issuance."); *In re Fotland*, 779 F.2d 31, 33 (Fed. Cir. 1985) ("The purpose of the law that a broadening reissue must be applied for within two years after patent grant is to set a limited time after which the public may rely on the scope of the claims of an issued patent."). Additionally, 35 U.S.C. § 252 ensures that if the patentee succeeds in obtaining a broader reissue patent, the public interest is protected through intervening rights. *See In re*

*Tanaka*, 640 F.3d 1246, 1251 (Fed. Cir. 2011) (noting that to the extent that the public may rely on what is actually claimed in the patent, this problem is addressed by the intervening rights statute, 35 U.S.C. § 252); *Doyle*, 293 F.3d at 1364.

Second, Congress limited reissue to instances where the patentee could demonstrate an "error without any deceptive intention." 35 U.S.C. § 251. Because the reissue statute is "based on fundamental principles of equity and fairness," the "error" requirement is liberally construed. *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1372 (Fed. Cir. 2006) (quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed. Cir. 1998)); *Mentor Corp. v. Coloplant, Inc.*, 998 F.2d 992, 995 (Fed. Cir. 1993). The most commonly asserted correctable error is the failure of the patentee's attorney to appreciate the full scope of the invention during prosecution of the original patent application. *Hester*, 142 F.3d at 1479-80 (citing cases); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1998). Yet, "not every event or circumstance that might be labeled 'error' is correctable by reissue." *Hester*, 142 F.3d at 1479.

Against the remedial backdrop of the reissue statute, one such circumstance that does not satisfy the "error" requirement is embodied by the recapture rule. The recapture rule bars a patentee from recapturing subject matter, through reissue, that the patentee intentionally surrendered during the original prosecution in order to overcome prior art and obtain a valid patent. *In re Mostafazadeh*, 643 F.3d 1353, 1358 (Fed. Cir. 2011) (quoting *Clement*, 131 F.3d at 1468); *Medtronic*, 465 F.3d at 1372; *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1370-71 (Fed. Cir. 2001).

The rationale underlying the rule is that the cancellation or amendment of the original claim in order to overcome prior art is a deliberate action that necessarily excludes the inadvertence or mistake contemplated by the statute's error requirement. *Medtronic*, 465 F.3d at 1372-73; *Clement*, 131 F.3d at 1468; *Mentor*, 998 F.2d at 995.

Determining whether the claims of a reissued patent violate 35 U.S.C. § 251 by implicating the recapture rule is a question of law that we review de novo. *Mostafazadeh*, 643 F.3d at 1358 (quoting *N. Am. Container*, 415 F.3d at 1349). The underlying factual findings are reviewed for substantial evidence. *Pannu*, 258 F.3d at 1370.

## II

To determine whether the applicants' reissue claims violate the recapture rule, we apply a three-step recapture rule analysis. *Mostafazadeh*, 643 F.3d at 1358; *N. Am. Container*, 415 F.3d at 1349; *Pannu*, 258 F.3d at 1371.[2]

## A

Under the first step, we "determine whether and in what 'aspect' the reissue claims are broader than the patent claims." *Mostafazadeh*, 643 F.3d at 1358 (quoting

---

[2]   For purposes of articulating and applying the three-step recapture analysis, the term "original claim" refers to the claim in the original application, prior to amendment or cancellation; the term "patented claim" refers to claims allowed over the prior art in the issued patent; and the term "reissue claim" refers to the claims subject to the reissue application at issue. *See Mostafazadeh*, 643 F.3d at 1358.

*Clement*, 131 F.3d at 1468); *Pannu*, 258 F.3d at 1371. The parties do not contest that with regards to the selecting means, the Board correctly determined that the "changing" limitation in claim 24 ("the reissue claim") is broader than the "cycling" limitation of patented claim 1 of the '766 patent ("the patented claim"). Appellants' Br. 44; Appellee's Br. 16-17. This conclusion is confirmed by dependent reissue claim 25, which limits reissue claim 24 by calling for "changing from a first to second character comprising cycling through displayed alphanumeric characters." J.A. 33.

B

Having agreed with the parties that the reissue claim is broader than the patented claim, step two requires us to "determine whether the broader aspects of the reissue claims relate to surrendered subject matter." *Mostafazadeh*, 643 F.3d at 1358 (quoting *Clement*, 131 F.3d at 1468-69); *N. Am. Container*, 415 F.3d at 1350. Both parties answer this inquiry in the affirmative. Appellants' Br. 45-46; Appellee's Br. 17.

Yet, they dispute what constitutes surrendered subject matter within the context of the recapture rule. The applicants argue that surrendered subject matter is limited to subject matter broader than the original claim 1 (i.e., before amendment) and necessarily excludes subject matter of intermediate scope that is broader than patented claim 1 and narrower than original claim 1. Apellants' Br. 44-46. In doing so, they misinterpret our case law.

As we have instructed in *Clement* and its progeny, we look to changes in the claim language and arguments in the prosecution history that were made in an effort to

overcome prior art to determine what subject matter the patentee surrendered. 131 F.3d at 1469; *see Mostafazadeh*, 643 F.3d at 1358; *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 475 F.3d 1323, 1332 (Fed. Cir. 2007); *Hester*, 142 F.3d at 1480-81. We have consistently held that when a patentee narrows the original claim in an effort to overcome a prior art rejection and makes arguments in support, the patentee surrenders the subject matter broader than the patented claim. *See, e.g.*, *Mostafazadeh*, 643 F.3d at 1360 ("The recapture rule is triggered only where the reissue claims are broader than the patented claims because the surrendered subject matter has been reclaimed in whole or substantial part (i.e., an added limitation has been eliminated or revised)."); *N. Am. Container*, 415 F.3d at 1350 (looking to change in claim scope and arguments during amendment to find patentee surrendered subject matter broader than the "generally convex" limitation of the patented claim); *Pannu*, 258 F.3d at 1371 (relying on change in claim scope and arguments during amendment to find that patentee surrendered subject matter broader than the "continuous, substantially circular arc" limitation of the patented claim).[3]

Thus, as the PTO urges, to determine what the applicants surrendered, we look to the change of scope between

---

[3] A contrary holding would render the analysis in *Pannu* and *North American Container* flawed. Furthermore, the holding in *Mostafazadeh*—that a modified limitation that was narrower than the limitation in the original claim recaptured surrendered subject matter, violating the recapture rule—would be also wrong. It would also render our instruction in *Clement* and its progeny to look at prosecution history and arguments accompanying the amendments superfluous.

the original and patented claim 1 and the accompanying arguments applicants made during the original prosecution. The applicants amended the original claim, which provided for "selecting means," to require "cycling" to select characters. This amendment was targeted at overcoming prior art—specifically, the Reed, Vogel, and Young patents. In the remarks accompanying this amendment, the applicants argued that the key distinction in the amended claim that overcame prior art was the use of "cycling" to "input 36 different characters (A-Z and 0-9) using only a few keys on the remote control device." J.A. 974-75. We agree with the Board that through their argument and amendment, the applicants' surrendered subject matter was any selecting means that was broader than the cycling limitation of the patented claim.

C

If the reissue claims are broader relative to the patented claims in a manner related to the surrendered subject matter, we must "determine whether the surrendered subject matter has crept into the reissue claim." *Mostafazadeh*, 643 F.3d at 1358 (citing *Clement*, 131 F.3d at 1469); *see Hester*, 142 F.3d at 1482. Unless the claims are materially narrowed in a way that avoids substantial or whole recapture of the surrendered subject matter, the surrendered subject matter has crept into the reissue claims and they are barred under the recapture rule. *Mostafazadeh*, 643 F.3d at 1361. The Board failed in several respects to apply this third step of the recapture rule; thus, we must vacate and remand.

1

First, the Board considered any broadening of the patented claim via a modified limitation, regardless of how minimal, sufficient to invoke the recapture rule's bar. Specifically, the Board determined that the broadening from cycling to changing "essentially broadens patented claim 1 to an intermediate scope (i.e., narrower than original patent claim 1 before amendment, but broader than issued claim 1)." *Board Decision*, 2010 WL 3503790, at *9. The Board then held that "[t]his broadening therefore constitutes an impermissible recapture of surrendered subject matter." *Id.* In doing so, the Board relied on an isolated statement in *North American Container*—that it is irrelevant that claims as a whole are intermediate in scope, 415 F.3d at 1350—and the MPEP—which states that "[i]f surrendered subject matter . . . has been in any way broadened in a reissue application claim, then a recapture rejection under 35 U.S.C. § 251 is proper," MPEP § 1412.02(I)(C). *Id.* at *9 & n.5. Such reliance is misplaced. Read in context, the statement in *North American Container* does little more than explain that the recapture rule analysis is conducted on a limitation-by-limitation basis, so that narrowing limitations completely unrelated to the relevant limitation will not save a reissue claim from the recapture rule, even if the additional narrowing limitations render the reissue claim, on the whole, of "intermediate scope." 415 F.3d at 1350. With regard to the MPEP, this court in *Mostafazadeh* has already admonished the Board's reliance on this section as inappropriate. 643 F.3d at 1360.

In erring, the Board failed to distinguish between instances where an added limitation has been modified versus instances where an added limitation is eliminated in its entirety. As *Mostafazadeh* teaches, such a distinc-

tion is critical to applying correctly step three of the recapture rule. *Id.* at 1361.

The majority of our precedent (including precedent relied on by the Board) involves instances where the patentee eliminates the added limitation in its entirety; in such circumstances it is clear that the surrendered subject matter has been recaptured and the scope of the reissue claim is even broader than the original. *See, e.g.*, *N. Am. Container*, 415 F.3d at 1350 (patentee eliminated the "generally convex" restriction on the "inner wall" limitation, which was added to overcome prior art); *Pannu*, 258 F.3d at 1371 (in its reissue claim, the patentee eliminated any limitation on the shape of the haptics, which had necessarily been added to overcome prior art during original prosecution); *Clement*, 131 F.3d at 1470-71.

In the case at bar, however, the Board has already determined that the added limitation—cycling—has not been eliminated; rather, it has been broadened to changing. *Board Decision*, 2010 WL 3503790, at *9. Such modification does not instantly implicate the recapture rule bar, as the Board held; rather, such a broadening modification must be evaluated to determine if it materially narrows relative to the original claim such that surrendered subject matter is not entirely or substantially recaptured. *Mostafazadeh*, 643 F.3d at 1358, 1359, 1361.

The appellee argues that material narrowing should be determined relative to the patented claim, rather than the original claim. We disagree. Using the original claim as a frame of reference for determining whether the reissue claim materially narrows is consistent both with case law and the purposes underlying the reissue stat-

ute.[4]   By measuring material narrowing relative to the original claim, which was deliberately surrendered during the original prosecution, we are ensuring that the patentee is unable to recapture what it surrendered *deliberately*, but allowing room for error, as required by the reissue statute.  35 U.S.C. § 251; *In re Richman*, 409 F.2d 269, 274-75 (CCPA 1969) ("We . . . find neither decision to be authority for the proposition that a limitation added to a claim in obtaining its allowance cannot be broadened, under [§ 251], by reissue if the limitation turns out to be more restrictive than the prior art required."); *see Medtronic*, 465 F.3d at 1375 (finding the surrender of certain subject matter during amendment not deliberate due to error—attorney's failure to understand the scope of the invention—and thus avoiding recapture rule).  As the court noted in *In re Richman*, even when narrowing a

---

[4]    *See Mostafazadeh*, 643 F.3d at 1358-59 (applying step three's "materially narrowing" analysis "relative to the original claims" where "original claims" are defined as "the claims before surrender"); *Clement*, 131 F.3d at 1469 ("If the scope of the reissue claim is the same as or broader than that of the canceled [i.e, original] claim, then the patentee is clearly attempting to recapture surrendered subject matter and the reissue claim is, therefore, unallowable."); *Ball Corp. v. United States*, 729 F.2d 1429, 1436 (Fed. Cir. 1983) ("The recapture rule bars the patentee from acquiring, through reissue, claims that are the *same* or of *broader scope* than those claims that were canceled from the original application.  On the other hand, the patentee is free to acquire, through reissue, claims that are *narrower* in scope than the canceled claims.  If the reissue claims are narrower than the canceled claims, yet broader than the original patent claims, reissue must be sought within 2 years after grant of the original patent."); *see also Clement*, 131 F.3d at 1470 ("Comparing reissue claim with claim 42 before the May 1988 and June 1987 amendments . . . , we see that claim 49 is narrower in one area" and broader in others).

claim to overcome prior art, "[c]ertainly one might err without deceptive intention in adding a particular limitation where a less specific limitation regarding the same feature, . . . would have been sufficient to render the claims patentable over prior art." 409 F.2d at 274. By contrast, if we use the patented claims, as the appellee urges, as a frame of reference and prevent any broadening relative to the patented claims, we would bar patentees from doing what they otherwise would be entitled to under the reissue statute—broadening their claims within two years when such claims were overly narrowed during prosecution as a result of attorney error. This would frustrate the remedial nature of the reissue statute and contradict case law.

With regards to determining whether a modified limitation is materially narrowing, *Mostafazadeh* should provide the Board with guidance for conducting such analysis. There, the "circular attachment pad" limitation was added to an original claim to overcome prior art. *Mostafazadeh*, 643 F.3d at 1356-57. On reissue, the patentees argued that the patented claims were partially inoperative because this limitation was unduly limiting, and filed reissue claims that broadened the limitation to "attachment pad," so that, with regard to this limitation, the reissue claims were of intermediate scope. *Id.* at 1357. The court rejected the applicants' contention that the recapture rule was avoided because they did not recapture everything they surrendered. *Id.* at 1361. The court explained that "the mere argument that the reissue claims constitute only a partial recapture is insufficient without a corresponding demonstration of material narrowing." *Id.* Where the modified limitation was contained in the prior art relied on by the examiner in the original prosecution, as the attachment pad was, the limitation is not materially narrowing. *Id.* at 1361 & n.4.

Thus, *Mostafazadeh* establishes, as a ceiling for determining whether a modified limitation material narrows, any recapture of surrendered subject matter that was in the prior art of the original prosecution.[5] The logic of such a ceiling flows from the concept of "error" under the reissue statute. When a patentee is narrowing its claim limitations due to prior art that would otherwise render the claims unpatentable, the patentee can only be doing so deliberately, without any possibility of error. Thus, if the patentee modifies the added limitation such that it is broader than the patented claim yet still materially narrows relative to the original claim, the recapture rule does not bar reissue. The Board's failure to distinguish this case from instances where the added limitation is deleted in its entirety and to conduct the proper analysis for a modified limitation is reason enough to vacate and remand.

---

[5] Applicants appeared to take a similar position during oral argument.

2

If the modified limitation does not materially narrow (or, in other cases, the limitation is eliminated), the Board must still determine whether the reissued claims were materially narrowed in other respects so that the claims have not been enlarged, and hence avoid the recapture rule. *Mostafazadeh*, 643 F.3d at 1361 (applying this analysis where limitation modified but not materially narrowing); *N. Am. Container*, 415 F.3d at 1349 (applying this analysis where added limitation was eliminated); *Pannu*, 258 F.3d at 1371 (same); *Hester*, 142 F.3d at 1482 (same); *Mentor*, 998 F.2d at 996 (same).

While the Board attempted to conduct this analysis, it incorrectly evaluated whether other limitations added during reissue materially narrow based on whether those added limitations were directed to an "overlooked aspect" of the invention. *Board decision*, 2010 WL 3503790, at *10-11. Whereas the recapture rule applies when surrendered subject matter is being reclaimed, overlooked aspects by definition were never claimed and thus never surrendered. *See Mostafazadeh*, 643 F.3d at 1360. Rather, as we explained in *Mostafazadeh*, "overlooked aspects" is a separate inquiry under reissue that is independent of whether or not the recapture rule applies.[6] Without conducting any analysis beyond determining that the limitations the applicants identified as materially narrowing were not overlooked aspects, the Board did not correctly apply step three.

---

[6] Indeed, during oral argument in *Mostafazadeh*, the PTO admitted that "overlooked aspects" are unrelated to the recapture rule. 643 F.3d at 1360.

Properly applied, the material narrowing must relate to the surrendered subject matter to prevent the recapture rule from applying. *Id.* at 1359 ("[T]he narrowing must relate to the subject matter surrendered during the original prosecution (i.e., the applicant cannot recapture the full scope of what was surrendered)."); *N. Am. Container*, 415 F.3d at 1350 (applying recapture rule bar because the narrowing of claims did not relate to the surrendered subject matter); *Pannu*, 258 F.3d at 1371-72 (determining that added limitations relating to the size and position of the haptics did not materially narrow relative to surrendered subject matter, which related to the shape of the haptics). If the narrowing is unrelated to the surrendered subject matter, it is irrelevant for the purposes of the analysis even if it renders the reissue claim as a whole intermediate in scope relative to the patented and original claims. *N. Am. Container*, 415 F.3d at 1350. If the narrowing is related to the surrendered subject matter, it must render the reissue claim narrower than it is broader in a manner pertinent to the subject matter surrendered during prosecution in order to avoid the recapture rule. *See Clement*, 131 F.3d at 1471.

CONCLUSION

The Board did not properly conduct step three of the recapture rule analysis. It failed to determine whether the applicants avoided the recapture rule bar on reissue by modifying their "cycling" limitation to "changing" in the reissue claim. Thus, we vacate the Board's decision. On remand, the Board should properly apply the recapture rule analysis, as articulated in this opinion and in *Mostafazadeh*, to the claims at issue and make necessary findings of fact.

**VACATED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

_____

(Serial No. 09/313,532)

**IN RE ROGER YOUMAN AND MARNEY MORRIS**

_____

2011-1136

_____

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent from the majority's holding that the scope of a claim in reissue is to be judged for recapture purposes by comparison with the claim as originally filed. When the originally filed claim has been amended, especially when the amendment was made in order to obtain allowance, a later reissue claim should be compared with the issued claim in order to determine whether it has been broadened and hence constitutes recapture of surrendered subject matter.

Reissue-recapture law, now encumbered by a variety of cases and writings, should basically not be complicated. Its application, though, is more difficult. Simply stated, if a patent applicant surrenders subject matter during prosecution, and then attempts to recapture part of what is surrendered, he should be denied that attempt because of the recapture rule. On the other hand, if the reissue

also attempts to significantly narrow the broadened claim over what has been patented, in other ways than pertain to the point of broadening, the so-called third prong of the recapture analysis, then recapture may be avoided because the claims overall are not broader than what is claimed in the issued patent.

The majority relies for its conclusion here on *In re Mostafazadeh*, which used the term "original" in noting what a reissue claim should be measured against for the third prong. 643 F.3d 1353, 1358–59 (Fed. Cir. 2011). But it makes no sense to compare a reissue claim to an original, pre-issued claim in this context. The original claim is only history as far as later narrowing is concerned. What should count is only whether a reissue claim is in toto broadened in relation to the issued claim. In accordance with these principles, the *Mostafazadeh* court held that the applicants in that case violated the recapture rule because the reissue claims were broader than the issued patent claims regarding the surrendered subject matter and were not "materially narrowed in a way that avoid[ed] recapture of the surrendered subject matter." *Id.* at 1361 (citing *N. Am. Container, Inc. v. Plastipack Packaging, Inc.*, 415 F.3d 1335, 1350 (Fed. Cir. 2005), *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1372 (Fed. Cir. 2001), and *In re Clement*, 131 F.3d 1464, 1471 (Fed. Cir. 1997)). Indeed, the cases relied on by *Mostafazadeh* likewise held that the "materially narrowing" inquiry focuses on whether the reissue claims were narrowed in any material respect compared to the issued patent claims, not the originally-filed claims. *E.g.*, *Pannu*, 258 F.3d at 1372 (holding that recapture rule applied when "the reissued claims were not narrowed in any material respect compared with their broadening"); *N. Am. Container*, 415 F.3d at 1349–50 (holding that recapture rule applied to reissued claims that had been

"enlarged" and were not "materially narrowed in other respects"). Thus, the majority's extension of dicta in *Mostafazadeh* is unwarranted.

The point of surrender and recapture is to ensure that an applicant does not amend a pending claim, surrender part of it in order to obtain issuance, and then file a reissue application broadening the issued claim over what he accepted in the Patent Office. It is broadening over the issued claim, not the originally filed claim, that should count. Moreover, concepts such as total or partial modification of a claim, and "overlooked aspects" of a claim are only tools for dealing with the basic concept of surrender, broadening, and recapture rather than basic rules.

Here, materially narrowing was not at issue because the limitations added by the patentee during reissue corresponded to limitations already present in the issued claims. *Board Decision*, 2010 WL 3503790 at 19–20. The originally-filed claim reciting a selection means did not limit that means to means for causing characters to cycle forward and backward. That limitation was inserted to overcome a rejection over the Reed, Young, and Vogel references. But, once that patent issued with the cycling limitation, the reissue claim replacing cycling with the broader changing limitation was a broadening. What matters is that it was a broadening over the issued claim reciting cycling, not a broadening over the originally-filed claim without the cycling limitation. By comparing the reissue claim to the originally-filed claim, the majority has drawn the wrong conclusion from *Mostafazadeh* and further complicated the law of reissue-recapture.

The Board found that reissue claims 24–27, 29–43, and 45–55 broadened surrendered subject matter and were not materially narrowed in other respects to avoid

recapture. Those conclusions were not lacking in substantial evidence or contrary to law. I would therefore affirm the Board's decision. Accordingly, I respectfully dissent.