NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE: IFTIKHAR KHAN, NAZIR KHAN,
*Appellants*

---

2017-2207

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/509,949.

---

Decided: February 15, 2018

---

IFTIKHAR KHAN, NAZIR KHAN, Burr Ridge, IL, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by MICHAEL SUMNER FORMAN, BENJAMIN T. HICKMAN, THOMAS W. KRAUSE, FRANCES LYNCH.

---

Before PROST, *Chief Judge,* MOORE, and CHEN, *Circuit Judges.*

PER CURIAM

Drs. Iftikhar Khan and Nazir Khan (collectively, "the Khans") appeal from a decision of the United States Patent and Trademark Office ("PTO") Patent Trial and

Appeal Board ("Board") affirming the examiner's rejections of claims 21–41 of U.S. Patent Application No. 14/509,949 ('949 application) seeking reissue of U.S. Patent No. 8,282,591 ('591 patent). Because the claims of the reissue application recapture surrendered subject matter in violation of 35 U.S.C. § 251, we *affirm*.

BACKGROUND

The '591 patent describes an "arteriovenous shunt" for use in hemodialysis of a patient. '591 patent at 1:14–18. Typically, blood is removed from and returned to the patient through a "graft" connected to a vein, which poses dangers of infection, clotting, and hyperplasia. *Id.* at 1:20–36, 1:39–45, 2:1–32. The Khans' shunt avoids these dangers by connecting a graft to an artery, rather than a vein, and passing the returned blood through a "single lumen venous outflow catheter" into the right atrium of a patient's heart. *Id.* at Abstract, 2:1–5, 2:11–15, 4:14–15, 4:32–33.

During prosecution of the '591 patent, the examiner rejected claims 1 and 17 as anticipated by U.S. Patent No. 6,102,884 ("Squitieri"). The Khans amended these claims to require that the "arterial graft has a first diameter," the "venous outflow catheter has a second diameter different from said first diameter," and the shunt includes a "cylindrical cuff" that "provide[s] a secure fit for said arterial graft first diameter and said venous outflow catheter second diameter." The Khans argued Squitieri does not disclose this "cylindrical cuff" limitation. The examiner then rejected claims 1 and 17 as unpatentable over Squitieri in view of U.S. Patent No. 5,399,173 ("Parks") and, later, in view of U.S. Patent No. 5,509,897 ("Twardowski"). The Khans again argued that none of the references disclose the "cylindrical cuff" limitation. The examiner maintained the rejections. The Khans appealed to the Board of Patent Appeals and Interferences, which reversed, allowing claims 1 and 17. *See Ex parte Khan*,

No. 2012-6569, 2012 WL 3067934, at *3 (B.P.A.I. July 27, 2012).

The Khans sought reissue of the '591 patent to include claims to "[a] method of preparing a patient for hemodialysis" (claim 21), "[a]n arteriovenous shunt" (claim 29), "[a] hemodialysis system" (claim 38), and "[a] method of performing hemodialysis on a patient" (claim 39). None of the reissue claims expressly recites the "cylindrical cuff" limitation.

The examiner rejected reissue claims 21–41 under § 251 as recapturing subject matter surrendered during prosecution of the '591 patent. The examiner concluded reissue claims 21 and 39 recapture subject matter surrendered from patented claim 17, and reissue claims 29 and 38 recapture subject matter surrendered from patented claim 1. The examiner also rejected claims 21, 22, and 25–39 for obviousness over Squitieri in view of U.S. Patent No. 5,509,897. The Board affirmed all of the rejections. It declined to separately consider the patentability of dependent claims 22, 24, 30, 40, and 41 under § 251, determining the Khans had waived this argument.

The Khans timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

I

Section 251 permits a patentee to seek a broadening reissue of a patent where, "through error and without any deceptive intent," the patentee originally claimed "less than he had a right to claim." *In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012). The "recapture rule," however, "bars a patentee from recapturing subject matter, through reissue, that the patentee intentionally surrendered during the original prosecution in order to overcome the prior art." *Id.* at 1343. Whether claims of a reissue application implicate the recapture rule is a question of

law we review de novo, while the underlying factual findings are reviewed for substantial evidence. *Id.*

To determine whether recapture has occurred, we apply a three-step analysis. *Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1267 (Fed. Cir. 2012). At step one, we "determine whether and in what 'aspect' the reissue claims are broader than the original patent claims." *Id.* If so, we determine at step two "whether the broader aspects of the reissue claims relate to surrendered subject matter." *Id.* At step three we "determine whether the reissue claims were materially narrowed in other respects, so that the claims may not have been enlarged, and hence avoid the recapture rule." *Id.*

Under step one, reissue claims 21 and 39 are broader than patented claim 17, and reissue claims 29 and 38 are broader than patented claim 1, because none of the reissue claims require the "cylindrical cuff" recited in the patented claims. The Khans' argument that the "cylindrical cuff" limitation is retained in dependent claims cannot save reissue claims 21, 29, 38, and 39, since "[t]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is *not* found in the independent claim," not that the limitation *is* found in the independent claim. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (emphasis added).

Turning to step two, the "cylindrical cuff" omitted from the reissue claims relates to surrendered subject matter. When the examiner rejected claims 1 and 17 as anticipated by Squitieri, the Khans amended these claims to require the "cylindrical cuff" and then relied on this limitation to distinguish over Squitieri. This constitutes surrender. *Greenliant*, 692 F.3d at 1269–71 (finding surrender where "[d]uring prosecution . . . , [the applicant] both amended claim 13 to add the . . . limit and relied on the . . . limit . . . to overcome prior art"); *see also*

*In re Mostafazadeh*, 643 F.3d 1353, 1359 (Fed. Cir. 2011) ("[A] limitation that is added during prosecution to overcome prior art cannot be entirely eliminated on reissue . . . ."). We need not address step three, as the Khans have not argued that any of reissue claims 21, 29, 38, and 39 are materially narrowed in other respects.

On this analysis, we conclude that the reissue claims impermissibly recapture subject matter surrendered during prosecution of the '591 patent. Accordingly, we affirm the Board's rejections of reissue claims 21–41 under § 251.

## II

On an appeal to the Board, an appellant's failure "to separately argue claims" within a group subject to a common ground of rejection "constitute[s] a waiver of any argument that the Board must consider the patentability of any grouped claim separately." 37 C.F.R. § 41.37(c)(1)(iv).

Dependent claims 22, 24, 30, 40, and 41 are subject to a common rejection under § 251 of claims 21–41. Yet in their appeal to the Board, the Khans did not separately argue these dependent claims. The Khans cannot rely on passing references to these dependent claims made in their reply brief to the Board, as "[a] statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim." 37 C.F.R. § 41.37(c)(1)(iv). In such cases, we have found these arguments are waived.

Accordingly, we find that the Board properly determined arguments regarding separate patentability of dependent claims 22, 24, 30, 40, and 41 have been waived. We have considered the Khans' other arguments and find them without merit.

CONCLUSION

Because we decide that reissue claims 21–41 impermissibly recapture subject matter surrendered during prosecution of the '591 patent, we need not reach the obviousness rejections. The judgment of the Board is *affirmed*.

**AFFIRMED**

COSTS

No costs.